Geraldine **MILLS**, M.D.

v.

Alfred **TOSELLI**, M.D.

No. 2002–425–Appeal.

Supreme Court of Rhode Island.

April 10, 2003.

Thomas Dickinson, Geraldine Mills (pro se), for Plaintiff.

Ruth DiMeglio, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

Expiration of the statute of limitations governing "[a]ctions for words spoken"—including any applicable discovery period—resulted in a summary judgment for the defendant, Dr. Alfred Toselli. The plaintiff, Dr. Geraldine Mills, a pediatrician, initially appealed *pro se* from that judgment in favor of the defendant; but after receiving notice of oral argument on her appeal, the plaintiff engaged counsel to represent her at the oral argument before this Court.

On June 4, 2001, plaintiff filed a Superior Court lawsuit charging defendant with tortious interference with her property rights. She alleged that defendant, plain-

tiff's former supervisor in the pediatrics department of St. Joseph Hospital, slandered her in 1993 by telling a potential employer (another hospital) about her supposedly "bordering psychotic" behavior when he supervised her work at St. Joseph. The defendant moved for and obtained summary judgment based upon the expiration of the one-year statutory limitations period provided in G.L.1956 § 9–1–14(a) for "[a]ctions for words spoken * * *." Because plaintiff failed to file her complaint within a year after defendant uttered the allegedly slanderous remarks and because she failed to demonstrate any compelling circumstances why we should not apply this limitations period to her complaint, we uphold the grant of summary judgment.

Between 1989 and July 1993, plaintiff worked in the pediatrics department of St. Joseph. At the time, defendant was chief of that department and plaintiff's supervisor. In July 1993, plaintiff's contract with St. Joseph expired and it was not renewed. To pursue other career options, plaintiff applied, among other places, to Rhode Island Hospital (hospital) for staff-admitting privileges. On November 16, 1993, a telephone conversation occurred between defendant and Dr. John Cronan, then the chairman of the hospital's credentialing committee. The defendant allegedly told Dr. Cronan that plaintiff's behavior while she worked for him was "bordering psychotic;" that she was litigious; and that she was incapable of doing her job as a pediatrician. Thereafter, the hospital denied plaintiff's request for staff-admitting privileges. The plaintiff appealed the hospital's decision to its credentialing commit-

tee. At the hearing on this appeal in March 1994, Dr. Cronan testified about his conversation with defendant, and described what defendant allegedly told him about plaintiff. Even though Dr. Cronan, in substance, testified that defendant told him what plaintiff now accuses defendant of saying about her, plaintiff contends that she did not believe Dr. Cronan at that time because he allegedly had attributed statements to other individuals on various occasions that, according to plaintiff, turned out to be untrue.

On May 18, 2000, plaintiff deposed defendant as part of the Board of Medical Licensure and Discipline proceeding. When asked whether he had ever used the term "psychotic" with regard to plaintiff, defendant replied "I don't honestly remember using it, but if—if somebody says I did, then fine, but I don't remember honestly using that word, psychotic." Thus, as plaintiff's counsel conceded during the oral argument of this appeal, defendant "essentially admitted" to making the statements in question at his deposition. Indeed, plaintiff herself said in her complaint that "defendant has admitted in deposition to having made such statements."

More than a year later, plaintiff filed suit on June 4, 2001.[1] In due course, defendant moved for and obtained summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure. On appeal, this Court ordered the parties to show cause why the issues raised should not be summarily decided. Because they have not done so, we proceed to decide the appeal at this time.

---

**1.** The plaintiff also sought compensation for injuries allegedly suffered as a result of other comments that defendant made at the deposition, including a statement indicating that plaintiff supposedly accused another doctor of being anti-Semitic. Although the court ruled that these statements were privileged, a ruling that plaintiff does not challenge, we note that our statute-of-limitations analysis also would bar a complaint arising out of these statements as well.

## Analysis

We review the granting of a summary-judgment motion on a *de novo* basis, applying the same standards as the motion justice. *Sobanski v. Donahue,* 792 A.2d 57, 59 (R.I.2002). "Summary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Delta Airlines, Inc. v. Neary,* 785 A.2d 1123, 1126 (R.I.2001). The parties opposing summary judgment may not "rely upon mere allegations or denials in their pleadings." *Bourg v. Bristol Boat Co.,* 705 A.2d 969, 971 (R.I.1998). "Rather, by affidavits or otherwise they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." *Id.*

"When a motion for summary judgment has been filed and properly supported, a litigation death knell begins to toll. Unless the opposing parties * * * can still this doleful dirge by showing the existence of a genuine issue of material fact, all legal clamor will soon subside into a final judgment for the movant and the opponents' case will be pronounced dead in the water." *Id.* at 970.

Generally, "[a]ctions for words spoken shall be commenced and sued within one year next after the words spoken, and not after." Section 9–1–14(a).

"In some 'narrowly circumscribed factual situations,' * * * however, when the fact of the injury is unknown to the plaintiff when it occurs, the applicable statute of limitations will be tolled and will not begin to run until, in the exercise of reasonable diligence, the plaintiff should have discovered the injury or some injury-causing wrongful conduct." *Martin v. Howard,* 784 A.2d 291, 299 (R.I.2001) (quoting *Renaud v. Sigma-Aldrich Corp.,* 662 A.2d 711, 714 (R.I.1995)).

The plaintiff urges the Court to apply this "discovery rule" to this case.

"[T]he heart of the discovery rule is that the statute of limitations does not begin to run until the plaintiff 'discovers, or with reasonable diligence should have discovered, the wrongful conduct of the [defendant].'" *Supreme Bakery, Inc. v. Bagley,* 742 A.2d 1202, 1204 (R.I.2000) (quoting *Benner v. J.H. Lynch & Sons, Inc.,* 641 A.2d 332, 337 (R.I.1994)).

"The reasonable diligence standard is based upon the perception of a reasonable person placed in circumstances similar to the plaintiff's, and also upon an objective assessment of whether such a person should have discovered that the defendant's wrongful conduct had caused him or her to be injured. If a reasonable person in similar circumstances should have discovered that the wrongful conduct of the defendant caused her injuries as of some date before the plaintiff alleged that she made this discovery, then the earlier date will be used to start the running of the limitations period." *Martin,* 784 A.2d at 300 (citing *Anthony v. Abbott Laboratories,* 490 A.2d 43, 47 (R.I.1985)).

In *Chorney v. Cullen,* 692 A.2d 694, 695 (R.I.1997) (mem.), we held that in an action for slander, "[t]he application of a discovery rule to this strict statute of limitations would require a compelling set of circumstances which have not even been approached by the plaintiff in the case at bar." The plaintiff in *Chorney* stated in an affidavit to the court that he had learned of the alleged slander only a couple of months before he filed the complaint. *Id.* at 694. Nevertheless, because "[a] party who seeks to oppose a motion for summary judgment has the burden of submitting

competent evidence to support the proposition that a disputed issue of material fact exists and cannot rest on mere conclusions or general statements," *id.* (citing *Manning Auto Parts, Inc. v. Souza,* 591 A.2d 34 (R.I.1991)), we held that the plaintiff's bare assertion did not approach the "compelling set of circumstances" needed to support "[t]he application of a discovery rule" in this context. *Id.* at 695.

Likewise, plaintiff in this case has not demonstrated compelling circumstances justifying application of the discovery rule to her slander claim.[2] Moreover, in a words-spoken case under § 9–1–14(a), application of the discovery rule, at most, would toll the accrual of the one-year statute of limitations only until plaintiff obtained knowledge of, or, in the exercise of reasonable diligence, should have obtained knowledge of the allegedly injurious statement and its possible nexus to the prospective defendant. Here, the record indicates that as early as March 1994, at the hospital hearing challenging the denial of staff-admission privileges to plaintiff, Dr. Cronan testified and attributed to defendant the statement that plaintiff's conduct while she was working for him was almost psychotic. Even if this information was not enough to provide plaintiff with actual knowledge both of the injury to her reputation and of the alleged speaker's identity, it certainly was enough to put her on inquiry notice.

We also reject as untimely the attempt by recently engaged appellate counsel for plaintiff to raise for the first time at the oral argument various asserted errors with respect to issues that plaintiff failed to raise either with the motion justice or in the prebriefing and supplemental statements she filed with this Court to support her appeal. Such contentions, we conclude, were not only waived for failing to raise them in a timely and appropriate manner, but also they were baseless in any event. For example, contentions that the motion justice erred in granting summary judgment *en toto* because the complaint allegedly contained other claims besides the ones arising from words spoken and that the motion justice abused his discretion in failing to wait for an attorney to arrive at the hearing on summary judgment—an attorney who had not even entered an appearance on plaintiff's behalf—would not have been meritorious even if they were properly preserved for appeal, which they were not.

Finally, even if we accepted as relevant the plaintiff's assertion that she did not believe Dr. Cronan's testimony—which we do not—and conclude that compelling circumstances existed in this case which warranted application of the discovery rule—even though no such circumstances existed—the one-year statute of limitations would have begun to run at the latest on May 18, 2000, when the plaintiff's attorney

---

**2.** The source of the compelling-circumstances test for applying the discovery rule to slander claims is the strict wording used in the applicable statute of limitation for words spoken; namely, G.L.1956 § 9–1–14(a). This statute specifically provides that "[a]ctions for words spoken shall be commenced and sued within one year next after the words spoken, and not after." Thus, "[t]he application of a discovery rule to this strict statute of limitations would require a compelling set of circumstances * * *." *Chorney v. Cullen,* 692 A.2d 694, 695 (R.I.1997). In an action for personal injury, however, § 9–1–14(b) provides that the lawsuit "shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after." The reference in this statute to the date a personal-injury action "shall accrue" more readily supports the application of a discovery rule because "the operation of a 'discovery rule' serves to set this accrual date at some time beyond the actual date of injury." *Arnold v. R.J. Reynolds Tobacco Co.,* 956 F.Supp. 110, 113 (D.R.I.1997).

deposed the defendant. When asked whether he ever had used the term "psychotic" with regard to the plaintiff, the defendant replied "I don't honestly remember using it, but if—if somebody says I did, then fine, but I don't remember honestly using that word, psychotic." Obviously, as of that late date, Dr. Cronan already had stated in 1994 that the defendant had used the word "psychotic" to describe the plaintiff. Given this equivocal answer at the deposition, a reasonable person would not have continued to rest on a belief that Dr. Cronan's previous testimony on this point was untruthful. In fact, by letter dated May 19, 2000, even the plaintiff's attorney suggested to her that the defendant was "at the very root of all your problems with regard to licensure and otherwise." Indeed, both the plaintiff and her appellate counsel have conceded that the defendant effectively admitted to making the statements in question at the deposition on May 18, 2000. Nevertheless, the plaintiff failed to file the complaint until June 4, 2001—more than a year after the deposition occurred and more than a year after she received her own attorney's letter to her attributing all her woes to the defendant.

## Conclusion

Because the plaintiff did not sue within one year of the time that the defendant allegedly uttered the slanderous comments at issue, as required by § 9–1–14(a); because the plaintiff has demonstrated no compelling circumstances that would justify an application of the discovery rule to this case; and because, even if we were to apply the discovery rule to the plaintiff, her lawsuit still was untimely, we deny the plaintiff's appeal and affirm the grant of summary judgment.